[Cite as *State v. Dayton*, 2026-Ohio-2623.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,               :      Case No. 24CA12

    v.                                :

                           :      <u>DECISION AND JUDGMENT</u>
NICHOLAS A. DAYTON,                     :      <u>ENTRY</u>

    Defendant-Appellant.              :
_____

<u>APPEARANCES:</u>

Christopher Pagan, Repper-Pagan Law, Ltd., Middletown, Ohio, for
appellant.

Jason Holdren, Gallia County Prosecutor, Isaac Beller, Gallia County
Assistant Prosecutor, Gallipolis, Ohio, for appellee.

_____

Smith, P.J.

    {¶1} Nicholas R. Dayton appeals the Sentencing Judgment Entry, filed September 11, 2024 in the Gallia County Court of Common Pleas. Mr. Dayton, "appellant," pled guilty to two counts, Possession of a Fentanyl-Related Compound and Possession of Cocaine. Here, appellant raises two assignments of error regarding (1) the trial court's failure to ensure recording of his plea hearing; and (2) the court's imposition of a condition to which appellant alleges he did not agree and to which he argues is overly broad.

{¶2} Based upon our review, we find merit to appellant's first assignment of error, which we sustain. We find his second assignment of error is rendered moot and we decline to consider it. Appellant's convictions are vacated and the matter remanded for proceedings consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

{¶3} On April 10, 2024, appellant was indicted on four counts: (1) Possession of Fentanyl-Related Compound, in violation of R.C. 2925.11(A), a felony of the fourth degree; (2) Possession of Cocaine, in violation of R.C. 2925.11(A), a felony of the fifth degree; (3) Trafficking in a Fentanyl-Related Compound, in violation of R.C. 2925.03(A)(2), a felony of the fourth degree; and (4) Trafficking in Cocaine, in violation of R.C. 2925.03(A)(2), a felony of the fifth degree. Appellant was arraigned on April 15, 2024 and entered not guilty pleas on all counts. The matter was scheduled for several hearings and a jury trial of July 8, 2024.

{¶4} The record later reflects, however, that on August 12, 2024, appellant pled guilty to Counts One and Two, affirmed that he had executed a written plea of guilty, and also affirmed that he had executed a written waiver of jury trial. The court found that appellant's plea was knowingly, intelligently, and voluntarily made with full awareness of the possible

consequences of his plea.  The court thereafter ordered a pre-sentence

investigation.  The sentencing date was September 9, 2024.

{¶5} At sentencing, the trial court began by reminding appellant about

the maximum penalties and asked if he wished to proceed to sentencing.

Appellant acknowledged his understanding.  The prosecutor then stated the

agreement as follows:

> Mr. Beller:  In consideration of the defendant's plea of guilty to Count 1 and 2, with Count 1 being a possession of fentanyl related compound under ORC Section 2925.11(A) and (C)(11)(B), a felony of the fourth degree and Count 2 being a possession of cocaine under ORC Section 2925.11(A) and (C)(4)(a), a felony of the fifth degree, the joint recommendation is for 24 months of community control with the underlying stack.  The State will move to dismiss Counts 3 and 4 at sentencing and defendant agrees to pay the cost.

> Court:  Thank you.  Ms. Price, is that correct?

> Ms. Price:  It is, Your Honor.

Thereafter, the trial court allowed Ms. Price to speak on behalf of

appellant.

> Ms. Price:  Your Honor, my client has been on Municipal Court probation, out of this same incident, excuse me, for seven months.[1]  He's been clean, he's been compliant with probation.  It's my understanding that the Municipal Court probation will terminate when this probation here in Common Pleas starts.

---

[1] Appellant's brief indicates that trial counsel incorrectly stated that the felony counts arose from the same incident relating to the Municipal Court probation.

[H]e has been, he has showed up for every Court hearing, he has been reasonable and compliant every step of the way. [W]e would ask that the Court go along with the agreement as stated.

Court:        All right, thank you. Mr. Dayton, you have the right and opportunity to address the Court at sentencing. Is there anything you'd like to say on your own behalf as it would pertain to sentencing, mitigation or anything you want the Court to know?

Dayton:       [O]nly that I have been, I went to detox voluntarily in January and, completed that and am on MAT service with HRS since February 5th. And I have been in treatment with TASC since January 25th as well and been compliant.[2]

{¶ 6} Afterward, the trial court stated:

I've also considered this underlying agreement upon which the plea is based. It's been stated here on the record. I've considered the record and all relevant information. Considered and am guided by the purposes and principles of sentencing under 2929.11 as well as the seriousness and recidivism factors relevant to the offense and the offended in 2929.19(B) through (F). I do find under (D)(4) a pattern of substance use and at least until recently a refusal, or inability to remain in treatment. Well, it looks like Mr. Dayton did make some, efforts, after this incident to get himself in a place where, he could make some progress in his life and I appreciate that. I have considered and am guided by also the factors in 2929.13(B). I am going to, I've reviewed the sentence, agreed sentence, and find that it does satisfy, the statutory mandates as to sentencing, it complies with those and I am going to

---

[2] The record does not reflect the meaning of the acronyms "MAT," "HRS," and "TASC." MAT likely references some type of medically-assisted treatment.

accept the sentence to community control . . . So, Mr. Dayton as part of your sentence community control sanctions are being imposed for a period of 24 months on each of these counts.  You'll serve that concurrently for one two-year period.  Do you understand?

Mr. Dayton: Yes, Your Honor.

Court:       Okay.  [Y]ou will have to abide by the standard terms of community control and probation and you're going to have to successfully complete STAR and transitional living.[T]hat is the CBCF. [3]

Mr. Dayton: What is…

Ms. Price:   Let her finish.

Mr. Dayton: Sorry, sorry Your Honor.

Court:       You'll have to report back to us by 9:00 a.m.. the next business day after you're released from transitional living.  Do you have a question?

Mr. Dayton: I was just, I was…

Ms. Price:   Just to be clear you're adding STAR as a term of probation?

Court:       And transitional.

Ms. Price:   And transitional. Okay.

Court:       Yep. Okay.  And if you have another question just let me know.

---

[3] The STAR program refers to the "Structure Therapy Advocacy Restoration" program which is a community-based correctional facility (CBCF) that provides behavior modification and alcohol and drug abuse treatment. R.C. 2301.51 authorizes the court of common pleas of any county to create CBCFs. CBCF's are residential lock-up facilities that provide treatment programs for certain eligible offenders. *See State v. Stevens*, 2019-Ohio-1838, at ¶fn.1 (4th Dist.).

Mr. Dayton: Oh, okay, Your Honor.

{¶7} The trial court explained further conditions, including evaluation for drug court; evaluation for trauma; random substance abuse monitoring; and imposition of a suspended 180-day jail sentence on each case. The court then asked if appellant had questions, and appellant replied, "No." The court further explained the consequences of violation of community control, his ability to pay costs, and jail time credit. At this point, the trial court asked, "Do you have any questions about any part of this sentence?" Mr. Dayton replied, "No, Your Honor."

{¶8} The trial court further explained post-release control; the consequences of being convicted on another felony while on community control; community service; and his appeal rights. Appellant indicated understanding of all the topics. The court then inquired:

Court:        All right. Any questions about anything we've
              talked about?

Mr. Dayton: I don't, well like I have some things like I just
              bought a house and have some, like do I have time
              to like get that taken care of?

Court:        A couple weeks at most.

Mr. Dayton: Okay.

Court:        Yep, you'll have to get it in a holding pattern.

Mr. Dayton: Okay.

Court:          You know, someplace where it can, can stop and
                wait for you to get back.

Mr. Dayton: Oh, well I have  a land…Yeah, I, I'll figure it out.

Court:          Okay.  All right.  Any other questions?

Mr. Dayton: No.

{¶9} At sentencing, the trial court found that appellant was amenable to a community control sanction.  The  court imposed two 24-month terms of community control to be served concurrently.  In addition to any conditions imposed as part of community control, the trial court ordered that a specific term would include entrance and successful completion of a CBCF program.

{¶10} On September 16, 2024, appellant filed a motion to stay imposition of the [CBCF condition] order as he was in the process of preparing to file an appeal.  On September 18, 2024, appellant filed a notice of appeal.  The docketing statement attached to the notice of appeal reflects that a full transcript of the pretrial, plea, and sentencing proceedings had been ordered.  On September 27, 2024, the trial court granted appellant's motion to stay his sentence pending appeal.

{¶11} On November 19, 2024, Shari L. Van Gundy, assistant court reporter for the Gallia County Common Pleas Court, filed an affidavit which

averred that she had diligently searched for a recording of the August 12, 2024 plea hearing and was unable to provide it. Ms. Van Gundy's affidavit provided in pertinent part:

> 3. I have conducted a search of the recordings in this case and found recordings of all hearings except the recording of the plea hearing held August 12, 2024.

> 4. Diligent search has been made of the record on the device in the General Division courtroom and the recording of the plea hearing does not exist on that device.

{¶12} On December 9, 2024, the Gallia County Clerk of Courts filed a notice of transmission of record. On December 31, 2024, appellate counsel filed a motion in this court for limited remand to the trial court for a statement of the evidence and proceedings under Appellate Rule 9(C). Appellate counsel pointed out that the plea hearing audio was unavailable and was critical for review of the appellate issues. However, this court found that remand was unnecessary to obtain a 9(C) statement. This court also established a new date for transmission of the record.

{¶13} On February 18, 2025, the trial court filed the following entry, "Trial Court's Settlement Entry Statement of the Evidence and Proceedings Under App.R. 9(C)." In an effort to facilitate preparation of the App.R. 9(C) process, the trial court attached its own handwritten notes from the plea hearing, which had previously been provided to counsel. Also attached to

the entry was a "Statement of the Evidence and Proceedings Under App.R. 9(C)," thirteen paragraphs, apparently submitted by appellant's current counsel. We emphasize two paragraphs as will follow:

1. Under the trial court's 7 February 2025 order, attorneys Pagan and Price conferred by the phone on 10 February 2025 and agree to the following statement of the evidence and plea proceedings under App.R. 9(C)(1).

   ***

8. The trial court advised Dayton that it did not have to accept the jointly recommended sentence.

{¶14} Also attached to the trial court's February 18, 2025 entry is "State's Objections to Defendant's Statement." The State did not object to the above Paragraphs One and Eight. However, the State did object to Paragraphs Nine through Twelve, which we will discuss below.

<div align="center">ASSIGNMENTS OF ERROR</div>

I.    THE TRIAL COURT ERRED WHEN IT VIOLATED APP.R. 9(A)(2) AND CRIM. R. 22 BY FAILING TO ENSURE A RECORDING OF DAYTON'S PLEA HEARING SO A TRANSCRIPT WAS AVAILABLE FOR APPEAL.

II.   THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING THE CBCF CONDITION BECAUSE IT WAS OVERLY BROAD AND UNNECESSARILY IMPINGED ON DAYTON'S LIBERTY.

Assignment of Error One - Absent Transcript

Standard of Review

{¶ 15} " ' Generally, a guilty plea waives most appealable errors, except, for example, that a plea was not knowing, intelligent and voluntary.' " *State v. Reed*, 2025-Ohio-2753, at ¶ 8 (4th Dist.), quoting *State v. Wheeler*, 2016-Ohio-5503, ¶ 5 (citation omitted.)  Appellant entered guilty pleas to two felony counts on August 12, 2024.  Crim.R. 22 provides that in serious offense cases, the proceedings shall be recorded.  *See State v. Kessler*, 2025-Ohio-1041, at ¶ 9 (5th Dist.).  However, appellant's plea hearing, for whatever reason, cannot be found and a transcript of the hearing cannot be prepared.  Therefore, appellant is unable to utilize the plea hearing transcript in his appeal.

{¶16} Appellant argues that the absence of the August 12, 2024 plea hearing transcript has materially prejudiced him.  He argues his liberty and property rights are affected in that he bargained for a nonresidential community control sentence in order to safeguard his family business and new home purchase.  "[W]hether [an] accused was put on notice that the trial court might deviate from the recommended sentence or other terms of the agreement before the accused entered his plea and whether the accused was given an opportunity to change or to withdraw his plea when he received this notice" necessarily implicate due process concerns.  *See State*

*v. Bakos,* 2023-Ohio-2827, at ¶ 28 (11th Dist.), (citation omitted), citing

Katz & Giannelli, Criminal Law, Section 44.8, at 154-155, (1996). Thus,

courts review these issues de novo, as due process concerns raise questions

of law. *See State v. Wheeler*, 2023-Ohio-2884, at ¶ 7 (1st Dist.); *State v.*

*Morris*, 2012-Ohio-2407, at ¶ 16.

<div align="center">Legal Principles</div>

{¶17} Pursuant to Crim.R. 22, however, the failure to record the

proceedings is not the end of the inquiry as to error. *See Kessler,* at ¶ 9.

" 'Recording equipment is not infallible and is subject to unanticipated

malfunctions. The mere fact that the recording equipment failed does not, in

and of itself, constitute reversible error, particularly in light of App.R. 9(C).'

" *Kessler, supra,* quoting *Mansfield v. Rembert,* 2023-Ohio-3787, at ¶ 15

(5th Dist.).

{¶18} This court is also mindful that although it is the court's

responsibility in the first place to record the proceedings, the appellant, if

possible, should attempt to use one of the procedures outlined in App.R. 9 to

supplement the record for appeal purposes. *See State v. Cunningham,* 1993

WL 97713,  at *3 (4th Dist.), where we observed our prior holdings that any

error was waived where appellant did not attempt to correct the record

pursuant to App.R. 9(C); *See also In re B.E.,* 2004-Ohio-3361, ¶ 15. A

conviction will not be reversed on the basis of unrecorded proceedings where the defendant has failed to demonstrate: (1) a request was made at trial that the conferences be recorded or objections were made to the failures to record, (2) an effort was made on appeal to comply with App.R. 9 and to reconstruct what occurred or to establish its importance, and (3) material prejudice resulted from the failure to record the proceedings at issue. *See Kessler, supra*, at ¶ 11 citing *State v. Palmer*, 80 Ohio St.3d 543, 554 (1997) *See also Wheeler, supra* at ¶ 7, quoting City of *Cleveland v. McGervey*, 2022-Ohio-3911, at ¶ 21 (8th Dist.).

Analysis

{¶19} Our review satisfies us that the trial court complied with all required notifications which establish guilty pleas as knowing, intelligent, and voluntary. Appellant has not made this argument. Instead, appellant's related argument is that he negotiated an agreement for nonresidential community control to "safeguard his family cabinet business and a recent home purchase."[4] However, appellant argues that the object of the plea agreement is destroyed by the CBCF condition. Appellant references the plea agreement explicitly stated in the document captioned "Guilty Plea" as

---

[4] The handwritten notes attached to the trial court's February 18, 2025 entry also indicate that appellant is vice-president of his family's company, that he "flips real property" and that he manages rentals.

evidence of his stated beliefs about his bargain - a jointly recommended 24-month community control sanction - with no mention or condition of successful completion at a CBCF.

{¶20} Appellant contends that the absent plea transcript would have revealed the discussion amongst the trial court and the attorneys. Appellant argues that he is prejudiced by the absence of the plea hearing transcript and is deprived of the opportunity for meaningful judicial review. Appellant has requested reversal of his conviction or, in the alternative, that the CBCF condition be stricken and the matter remanded to the trial court for imposition of alternative conditions which would not impinge on his liberty and property rights.

{¶21} We begin by observing that appellant was charged with serious offenses which, pursuant to Crim. R. 22, mandate that the proceedings be recorded. It appears that the court and the parties assumed the plea hearing was being recorded, so no request or objection was made. Next, appellant has complied, to the best of his ability, to construct the plea hearing by use of the App.R. 9(C) statement. What remains is our determination as to whether or not material prejudice occurred because a plea hearing transcript does not exist.

{¶22} This court has previously addressed Crim.R. 22 and the failure to provide recordings of the proceedings. In *Cunningham, supra*, the defendant was found guilty of felony complicity to commit theft. On appeal, Cunningham argued the trial court erred to her prejudice when it failed to employ an adequate recording device to maintain a complete record of all proceedings. Two transcripts were filed and the second (an apparently improved version) still contained "far fewer gaps, one hundred eighty-five by appellant's count." These gaps represented gaps and unintelligible places in the trial testimony.

{¶23} This court pointed out the well-established principle that a reviewing court will not presume prejudice. *Id.* at *4, citing *State v. Watson*, 61 Ohio St. 3d 1,15 (1991), abrogated on other grounds by *State v. McGuire*, 1997-Ohio-335. However, we also noted that "[i]mplicit in this rule is the idea that the record will accurately reflect what actually occurred at the trial. An accurate transcript is the lynch pin of appellate review." *Cunningham, supra. See also McGervey, supra,* at ¶ 25, citing *Cunningham, supra.* Further, we observed in *Cunningham*:

> A criminal defendant is entitled to appeal as a matter of right. Section 6, Article IV, Ohio Constitution. Occasionally, there will be a mistake or a failure which results in a faulty or less than perfect transcript which can be corrected by resorting to the procedures described in App.R. 9, above. However, where a trial court maintains a

> system so that, regularly and consistently, the events at trial cannot be transcribed and a proper appeal record cannot be prepared, such failure reaches constitutional proportions. Appellate review is vitiated.

*Cunningham, supra*. Cunningham was represented by a different attorney at her trial, and her appellate counsel had no independent recollection of the record. Cunningham was unable to utilize the App.R. 9(C) procedures.

{¶24} Based upon our de novo review, this court found the transcript of the proceedings in Cunningham's case was so incomplete that it impeded any effective appellate review. We found that applying the relevant principles discussed above the transcript and record were so inadequate as to render appellate review impossible and the right to appeal meaningless. Accordingly, we sustained Cunningham's assignments of error related to the deficiency, reversed the judgment of the trial court, and remanded the case for a new trial.

{¶25} In this case, the "Guilty Plea" form signed by appellant and his counsel provides at Paragraphs Two and Three:

> No promises have been made except as part of this plea agreement *stated entirely as follows*:
>
> **In consideration of the Defendant's plea of guilty to Count 1 and 11, a joint recommendation for 24 months of Community Control with the underlying stacked. The State will move to dismiss counts III and IV at sentencing. Defendant agrees to pay costs.**

(Emphasis added as to italics.  Boldface in original.)  At the bottom of Page

Three and continuing onto Page Four, the Guilty Plea states:

> It is my decision to plead guilty thereby placing myself completely and without reservation of any kind upon the mercy of the Court with respect to my punishment.  ***I understand that the recommendation of the Prosecuting Attorney is not binding upon the Court and that the Court, and the Court alone, determines the appropriate sentence.***

(Italics and boldface in original.)  But for the absent plea hearing transcript,

we might easily resolve this matter by finding that the trial court properly

gave all required notifications and appellant understood that the jointly-

recommended sentence, as stated in the plea agreement, was not binding on

the trial court.  We look to more recent decisions discussing the failure to

record or provide an audible transcript of the trial court's proceedings.

{¶26} In *Cleveland v. McGervey*, *supra*, the defendant was convicted

of aggravated disorderly conduct at a bench trial.  Given that her conviction

was of a petty offense, the defendant was required to request recording.  The

appellate court noted that a substantial portion of the bench trial was not

captured.  The entirety of the prosecutor's case in chief was not part of the

record, as well as the defendant's direct examination.  The appellate court

found that given the deficiencies in the record, there was no basis to

conclude whether a verbal request for recording was made.  The deficiency

in the recording system was not discovered until a transcript of proceedings was requested.

{¶27} The *McGervey* court recognized that the failure of recording equipment in the trial court does not result in prejudice per se. However, citing our decision in *Cunningham,* the court determined that McGervey had demonstrated that meaningful appellate review could not be achieved given the magnitude of the missing record and her inability to comply with App.R. 9. The Eighth District court found the trial court violated McGervey's rights to due process by failing to provide an adequate recording of the trial proceedings. The judgment was vacated and case remanded for proceedings consistent with the opinion.

{¶28} In S*tate v. Riddlebarger,* 2024-Ohio 5356 (9th Dist.), the defendant challenged the sufficiency and manifest weight of the evidence supporting his conviction for domestic violence. However, defendant did not attempt to prepare a statement of evidence under Appellate Rule 9(C). Defendant did submit an affidavit from the court's official reporter who stated that it is very difficult to hear parts of the trial and she could not hear the judge or accusing witness clearly at times. Upon review, the appellate court noted that the audio recording of the trial demonstrated from the beginning of the trial up to the first witness was almost completely

inaudible.  In addition, while questions to the complaining witness were mostly audible, the answers were not audible.  The Ninth District court found that the defendant had established that he was prejudiced by the inadequacy of the trial recording.

{¶29} In *State v Wheeler,* 2023-Ohio-2884 (1st Dist.), Wheeler was found guilty of two counts of aggravated menacing.  Wheeler argued on appeal that her convictions were not supported by the evidence and that her due process rights were violated by the trial court's failure to provide an adequate recording of the trial proceedings pursuant to Crim.R. 22.  The state conceded the error as to the lack of a recording.  After reviewing the record and applicable case law, the appellate court agreed that the specific facts and circumstances of these cases—viewed in light of the State's concession of the issue—required reversal due to the inadequate recording of the trial proceeding.  Particularly, when analyzing the material prejudice claim, the appellate court noted that the case was a "he said/she said" matter, hinging entirely on witness credibility.  The absence of one of the alleged victim's direct examination undermined Wheeler's ability to present her arguments on appeal.

{¶30} By contrast, in *State v. Kessler*, 2025-Ohio-1041, (5th Dist.), the court found:  (1) that the statement of proceedings created by the

defendant, State, and trial court was sufficient to cure the trial court's error

in failing to record the third day of Kessler's trial; and (2) the defendant was

not materially prejudiced by the failure to record his own testimony and the

jury instructions.  The defendant's testimony was denial of all allegations of

sexual misconduct.  His trial counsel had referred to the denial in his closing

argument.  As to the jury instruction, no prejudice occurred because the

written jury instructions were provided and there were no objections to the

jury instructions at trial.  Appellant also argued that there was no

information in the record as to whether the jury was polled and the verdict

recorded.  However, these issues were essentially waived as Kessler did not

attempt to reconstruct the record on two additional issues.

{¶31} As indicated above, the State objected to Paragraphs 9 through

12 in appellant counsel's attempt to prepare an agreed statement pursuant to

App. R. 9(C).  We discuss these in turn.

{¶32} Appellate counsel's Paragraph Nine provided:

> 9.   A CBCF as a condition of community control was
> not part of the jointly-recommended agreement.

The State responded:

> This should not be included because it would not be
> reflected if there were a complete record of the hearing.
> There is a lot that can be implied and inferred from
> statements made, and the plea forms noted that sentencing
> was only controlled by the trial court and not the

prosecutor's office. It is inappropriate to include statements here that would not be reflected if there were an actual transcript from the hearing.

{¶33} We disagree that this fact, with certainty, would not have been reflected in the plea hearing transcript. On a related issue, this Court and other courts have held that statements of counsel during plea hearings can be considered in determining whether an appellant subjectively understood that the trial court was not bound by a joint sentencing recommendation. *See State v. Dye*, 2025-Ohio-1973, at ¶ 23 (4th Dist.); *State v. Clark*, 2002-Ohio-6684, ¶ 13 (4th Dist.); *State v. Hough,* 2011-Ohio-6425, ¶ 30 (7th Dist.) In this case, it is possible that the plea hearing contained statements from either counsel or the court which would be of some assistance.

{¶34} Paragraph Number Ten states:

10. Dayton states that the trial court failed to advise that a CBCF was a potential community control condition under the jointly recommended sentence.[5]

The State's objection is as follows:

This is highly inappropriate to include in a filing that would be treated as a record of the hearing. This is an attempt to include a Defendant's state of mind in the record. A record would not include what a Defendant's knowledge was, as it is up to the Defendant at a plea

---

[5] In State's Objections to Defendant's Statement, Number 10 is not set forth as above. Instead, it reads as follows: Dayton did not know that a CBCF which could include months in a lockdown facility, was a potential community control condition under the jointly-recommended sentence. He believed, consistently with the written plea agreement and the trial court's notes, see Exhibit A, that the recommendation was for straight community control. This belief was founded on the written plea agreement and the advisements made at the plea hearing.

hearing to speak with his attorney and the trial court and have his questions answered. A record reflects what was said at a hearing, not what the parties were thinking.

In our view, while it would not be appropriate to set forth a description of appellant's state of mind as an agreed fact, it is possible that the plea hearing transcript contains statements of either counsel or the court which would demonstrate whether a CBCF was discussed or even mentioned.

{¶35} Finally, we discuss Paragraphs Numbers 11 and 12 jointly. Paragraph Number 11 provides:

> 11. Prosecutor Fisher was present for most, but not all the plea hearing. He does not recollect what was stated about a CBCF as a potential community control condition under the jointly- recommended sentence.

The State objects as follows:

> It is accurate Prosecutor Fisher was present for most of the plea hearing. It is also true the trial court usually advises that a CBCF is a possibility and advises on it.

Paragraph Number 12 provides:

> 12. Trial counsel Price cannot recollect what was stated about a CBCF as a potential community control condition under the jointly- recommended sentence.

The State's Objection is as follows:

> Trial counsel cannot recall if a CBCF was mentioned at the hearing. Additionally, while it is true Dayton had completed a CBCF in a different case, this also would not be reflected in a record. A record of this case would not reflect what the Defendant did in another case unless he

mentioned it during the hearing.  Here, because neither side is sure if it was mentioned, it should not be included.

{¶36} Looking at Paragraphs 11 and 12, we find it is fair to conclude that, despite the State's objections, neither the prosecutor nor trial counsel can recall what, if anything, was stated at the hearing about a CBCF as a possible condition of community control.  We find it irrelevant that the trial court "usually advises that a CBCF is a possibility."  And unfortunately, the trial court's notes, helpfully provided to facilitate the App.R. 9(C) statement, do not shed  light on whether or not a CBCF condition was explicitly discussed.

{¶37} In *State v. Sarver,* 2018-Ohio-2796, (4th Dist.), the defendant argued on direct appeal that he did not knowingly and intelligently enter his guilty pleas because he apparently mistakenly believed that the trial court would sentence him to complete a drug rehabilitation program rather than prison.  We observed that a plea agreement generally should be rescinded "if the parties and the trial court have made a mutual mistake regarding the terms of a plea agreement."  *Id.* at ¶ 21, (citations omitted.)  *See also State v. Vore,* 2021-Ohio-185, at ¶ 22 (4th Dist.).  The Ohio Supreme Court has noted that there is " 'no easy or exact way to determine what someone subjectively understands,' but where the defendant receives the proper information, 'we can ordinarily assume that she understands that

information.' " *State v. Nevels,* 2020-Ohio-915, at ¶ 22, (8th Dist.),

quoting *State v. Carter*, 60 Ohio St.2d 34, 38 (1979); in deciding whether

the defendant had the required information, we look at the facts and

circumstances surrounding the case. *See Nevels, Id., Carter, supra. See*

*State v. Harris,* 2020-Ohio-805, at ¶ 14 (8th Dist.). While *Sarver, Vore*, and

*Nevels* are not on point, they do demonstrate that the facts and circumstances

surrounding these issues are relevant and without a transcript, appellant is

"hamstrung" in his ability to show the court exactly what transpired at his

plea hearing.

{¶38} We confess that we find this to be a close case. The record

reflects that appellant indicated his understanding that the trial court did not

have to accept the jointly-recommended sentence. Appellant received

substantial benefit. It is difficult to believe that even if it could be proven

that the CBCF condition was known to him, appellant would not have

entered the plea agreement in an effort to avoid actual incarceration in a

prison. Appellant was facing 6 to 18 months on the two felony-four counts.

He was facing 6 to 12 months on the two felony-five counts. Appellant

could have received consecutive sentences.

{¶39} We also observe that when the trial court first stated that

appellant must "successfully complete Star and transitional living," i.e., the

CBCF, appellant interrupted. When the court further explained and appellant further interrupted, appellant's attorney asked, "Just to be clear you're adding STAR as a term of probation?" To us, this possibly indicates surprise by both appellant and his counsel.

{¶40} Yet when the trial court asked if appellant had further questions, he replied, "I don't, well like I have some things like I just bought a house and have some, like do I have time to get that taken care of?" When the court indicated he had a couple of weeks, appellant replied "I'll figure it out." Were we considering an appeal of a denial of a motion to withdraw his plea, we might find that appellant simply had a change of heart as the two weeks drew to a close.

{¶41} However, in this appeal, the point of contention is the plea hearing. Without the plea hearing transcript, we simply cannot determine the merits of appellant's argument about his plea agreement. We are guided by cases more recent than our decision in *Cunningham* for our conclusion that appellant has been materially prejudiced by the absence of the plea hearing transcript. Like *Wheeler*, appellant is deprived of the opportunity to substantively contest his plea agreement on appeal. Therefore, we find that appellant is able to show material prejudice. We conclude the first assignment of error has merit and is hereby sustained.

{¶42} We further observe that ordinarily, events transpiring in this court are able to be transcribed. Nothing convinces us that the absence of the recording is anything other than an unavoidable, unanticipated occurrence. And, although we find reversal necessary, we are mindful that not every recording failure or lack of a transcript necessitates the reversal of the trial court's judgment. *See State v. Estep,* 2002-Ohio-6141, at ¶ 24 (4th Dist.).

Assignment of Error Two - Additional Community Control Sanction

Legal Principles

{¶43} Appellant argues that the trial court abused its discretion in adding successful completion of a CBCF as a term of his community control. The additional term, as argued above, supposedly defeats the purpose of the plea agreement appellant entered with the State. However, in light of our decision on the first assignment of error, appellant's second assignment of error is rendered moot. Therefore, pursuant to App.R. 12(A)(1)(c), we decline to consider it.

{¶44} Having found merit to appellant's first assignment of error, and finding appellant's second assignment of error moot, we hereby reverse the judgment of conviction and remand the cause to the trial court for proceedings consistent with this opinion.

**JUDGMENT REVERSED, CAUSE REMANDED.**

<u>**JUDGMENT ENTRY**</u>

It is ordered that the JUDGMENT BE REVERSED AND THE CAUSE IS REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION and that costs be assessed to appellee.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45- day appeal period set forth in the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Wilkin, J., concur in Judgment and Opinion.

For the Court,


_____
Jason P. Smith
Presiding Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**